1   **WO**

2

3

4

5

6   **IN THE UNITED STATES DISTRICT COURT**

7   **FOR THE DISTRICT OF ARIZONA**

8

9   Matthew Alejano Cordova,                    No. CV-20-00163-TUC-SHR (DTF)

10                      Petitioner,             **REPORT AND RECOMMENDATION**

11   v.

12   David Shinn, et al.,

13                      Respondents.

14

15          Petitioner Matthew Alejano Cordova (Cordova or Petitioner) presently incarcerated

16   in Arizona State Prison Complex-Eyman Unit in Florence, Arizona, filed an Amended

17   Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (Doc. 6.) Before the

18   Court are the Amended Petition, Respondents' Answer to Petitioner for Writ of Habeas

19   Corpus, and Petitioner's Reply to State's Response for Petition for Writ of Habeas Corpus.

20   (Docs. 6, 23, 24.) This matter was referred to the undersigned United States Magistrate

21   Judge for a Report and Recommendation. (Doc. 11 at 6.)

22          As more fully set forth below, this Court recommends that the Amended Petition be

23   denied and dismissed.

24                              **BACKGROUND**

25   **State Trial Court Proceedings**

26          Petitioner was charged with armed robbery, aggravated robbery, and kidnapping.[1]

27   _____

28   [1]Petitioner was also charged with possession of a deadly weapon by a prohibited possessor.
     (Doc. 23-1 at 4.) This charge was later severed from the other charges and then dismissed
     without prejudice. *State v. Cordova*, No. CA-CR 2014-0231, 2015 WL 1394696, at n.2

(Doc. 23-1 at 3.) After a jury trial, Petitioner was convicted as charged and thereafter sentenced to concurrent sentences, the longest of which is 15.75 years' imprisonment. *Id.* at 9, 15-16. The Arizona Court of Appeals described the facts underlying Petitioner's convictions as follows:

> At around 8:00 on an evening in November 2013, J.A. was selling alarm systems door-to-door in a residential area near First Avenue and Fort Lowell Road, in Tucson. Vanessa Rodriguez, Cordova's girlfriend and codefendant, waved to J.A. and asked him to help her nephew who had been hurt. J.A. followed Rodriguez around a corner, heard sounds that he described as "[a] bullet chambered into a firearm," turned around, and saw two men, each pointing a gun at him. Both men yelled at him, demanding that he give them his wallet and phone. One of the men dragged J.A. by the shoulders to a dark area, "threw [him] down," and started "patting [him] down." The other man said "cap him" while J.A. was on the ground, which J.A. understood to mean "kill him." J.A. removed a gun from his waistband and fired three or four shots towards the man who was on top of him. J.A. then stood up and fired two more shots toward the second man before running away.
>
> Cordova arrived at University Medical Center (UMC) with Rodriguez approximately fifteen minutes after the first 9-1-1 call came in reporting shots had been fired near where J.A. had been robbed. Cordova, who had been shot in the back, had with him a black hooded sweatshirt containing "a hole with some blood around it." His other clothing was "very highly saturated with blood."

*State v. Cordova*, No. CA-CR 2014-0231, 2015 WL 1394696, at ¶¶ 2-3 (Ariz. App. Mar. 26, 2015) (footnote omitted). The facts as recited by the court of appeals are entitled to a presumption of correctness. *See* § 2254(e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that statement of facts in Arizona Supreme Court opinion should not be afforded presumption of correctness).[2]

---

(Ariz. App. Mar. 26, 2015).
[2]Petitioner disagrees with some of the facts recited by the Arizona Court of Appeals. (Doc. 24 at 8.) To reject the state court's recitation of facts, Petitioner must show the facts are unreasonable. *See Wood v. Allen*, 558 U.S. 290, 301 (2010). Petitioner has not done so; thus, this Court accepts the state court's recitation and affords it the appropriate deference.

**Proceedings in the Arizona Court of Appeals**

On June 20, 2014, Petitioner filed a notice of appeal. (Doc. 23-1 at 20.) Petitioner represented himself after the trial court found he was competent to do so. *Id.* at 33, 35. Petitioner's opening brief raised six issues:

(1) Whether the trial court abused its discretion in denying Cordova's motion to dismiss based on lack of probable cause to arrest Cordova;

(2) Whether the trial court abused its discretion in denying Cordova's motion to dismiss based on illegal search and seizure of the Ford Crown Victoria found near the scene of the robbery;

(3) Whether the trial court abused its discretion in denying Cordova's motion to dismiss based on perjured testimony presented to the grand jury and failing to require the grand jury to make a new probable-cause determination;

(4) Whether the trial court abused its discretion by admitting Rodriguez's statements;

(5) Whether the trial court abused its discretion in denying Cordova's motions to sever his trial from Rodriguez's trial; and

(6) Whether the trial court erred by denying Cordova's motion for judgment of acquittal because there was insufficient evidence sustaining the verdict.

(Doc. 6 at 14.) The Arizona Court of Appeals affirmed Petitioner's convictions and sentences. *Cordova*, 2015 WL 1394696, at ¶ 43.

**Proceedings in the Arizona Supreme Court**

Petitioner filed a petition for review before the Arizona Supreme Court. (Doc. 6-1 at 6, 8.) On December 1, 2015, the Arizona Supreme Court denied the petition without explanation. *Id.* at 6.

**State Court Post-Conviction Relief Proceedings**

Petitioner timely filed a notice for post-conviction relief (PCR). (Doc. 23-1 at 38.) The post-conviction court appointed counsel. *Id.* Petitioner's attorney filed a notice that he found no colorable claims to raise. *Id.* at 41-42. The court permitted Petitioner to file a pro se PCR petition. *Id.* at 45. Petitioner alleged ineffective assistant of trial counsel because

she:

    (1) Failed to present evidence of third-party culpability;

    (2) Failed to call an expert witness to testify that Cordova could not have been shot by the victim's gun;

    (3) Failed to object to the in-court identification of Rodriguez or moving for a mistrial after the identification; and

    (4) Failed to advise Cordova of his right to testify or advising him to not testify.

(Doc. 6-1 at 33-34.) Petitioner also asserted that he was charged because of malicious and selective prosecution. *Id.* at 34. On June 5, 2018, the post-conviction court denied Petitioner's PCR petition, determining Petitioner had failed to state a colorable claim for relief. *Id.* at 72.

Petitioner filed a pro se petition for review in the Arizona Court of Appeals, renewing his claims of ineffective assistance of counsel. *Id.* at 73. On October 3, 2018, the Arizona Court of Appeals granted relief but denied review. *State v. Cordova*, No. 2 CA-CR 2018-0178-PR, 2018 WL 4781486, at ¶ 7 (Ariz. App. Oct. 3, 2018). Petitioner sought review in the Arizona Supreme Court, which denied relief on April 22, 2019. (Doc. 23-1 at 60.) On July 23, 2019, the Arizona Court of Appeals issued its mandate. *Id.* at 62.

**Federal Habeas Corpus Proceeding**

On April 15, 2020, Petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (Doc. 1.) The district court dismissed the petition with leave to file an amended petition within 30 days. (Doc. 5 at 2-3.) On May 20, 2020, Petitioner filed the amended petition for writ of habeas corpus. (Doc. 6.)

The grounds for relief alleged in the Amended Petition are as follows:

"**Ground One**: Petitioner's Fourteenth Amendment right to due process is currently being violated by a conviction that lacks sufficient evidence to sustain it." (Doc. 6-1 at 105.) Petitioner explains he did not match the victim's description of the assailants and the lack of blood evidence at the scene of the crime was inconsistent with his clothes being saturated with blood. *Id.* at 105-106. He also highlights testimony about another gunshot

victim and report, arguing that this indicated there were two separate shootings on the night in question. *Id.* at 107. He also contends there was no evidence to connect him or his codefendant with the Ford Crown Victoria, the victim's missing phone, and the recovered firearm. *Id.* at 108.

"**Ground Two**: Petitioner's Fourteenth Amendment right to due process is being violated by having to stand trial after an illegal arrest and the admission of illegally seized evidence resulting in a fundamental defect and a miscarriage of justice." *Id.* at 110. Petitioner argues that he was arrested at the hospital "at the end of the night" when a guard was placed on him. *Id.* He asserts that at the time of arrest, officers lacked probable cause to connect him with the robbery. *Id.* at 111-12. Further, Petitioner maintains that police illegally seized the Ford Crown Victoria after a judge refused to sign a warrant for its search and seizure. *Id.* at 112-13.

"**Ground Three**: Petitioner's Fourteenth Amendment right to due process has been violated by a conviction at trial after an indictment that was based on perjury." *Id.* at 119. Petitioner claims that Detective Barber provided the grand jury with "false testimony, misleading evidence[,] and crucial omissions to obtain an indictment." *Id.*

"**Ground Four**: Petitioner's Fourteenth Amendment right to due process was violated by the trial court's failure to sever, resulting in a trial that was fundamentally unfair." *Id.* at 121. Petitioner asserts that "Had [he] had a separate trial, the State would have had literally nothing to present to the jury. All the State did was compile a bunch of misleading evidence onto [his] wife's plate, made [him] go to trial with her, then tell the jury that [they] were in a romantic relationship as an offer of [his] guilt." *Id.*

"**Ground Five**: Sixth Amendment right to effective counsel was violated by Counsel[']s failure to present exculpatory evidence of third[-]party culpability." *Id.* at 122. Petitioner claims the following:

> Prior to trial, under my supervision, I had my attorney interview several members of the STU. Specifically, my attorney had obtained a statement from Det. Barber that he was familiar with two other robberies in the exact same location, with the same suspects, victims who were robbed in the same modus operandi for the same items as the victim in this case.

1
2
3
4

> These three robberies were only days apart, and both victims stated they were lured into an alley by a female suspect just like the victim in this case. However, despite having this presumably ex[]onerating evidence on hand prior to trial, my attorney for whatever reason chose not to interview these other victims, call them to testify, or present a third[-]party defense.

5   *Id.*

6   "**Ground Six**: Sixth Amendment right to effective counsel was violated by Counsel

7   failing to call expert and/or medical witness to explain to the jury the physical impossibility

8   of [Petitioner] being shot by the victim['] s gun." *Id.* at 123. Petitioner further asserts:

9
10
11
12

> Prior to trial my attorney had spoken with my doctor, as well as obtained my medical records from that night. My doctor informed my attorney that I was shot with a large caliber bullet a .40 or .45, but it was not a hollow-point. At trial, Mr. Arias testified that he exclusively uses hollow-point ammunition for home protection purposes, [and] that those bullets tend to get stuck in walls as to not hit a person in another room.

13
14

> I was shot in the middle of the back, to which the bullet exited through my collarbone, which means that the person who actually shot me was significantly lower than me.

15
16
17
18

> Had my attorney called an expert medical/ballistics expert to testify at trial, they could have told the jury that my wounds were inconsistent with hollow-point ammunition, and it would be impossible for a 5-10" man such as Mr. Arias standing on his feet to shoot me and obtain the same trajectory angle as my wound.

19
20
21
22

> I was obviously present when I was shot and know with 100% certainty that it was not by robbing Mr. Arias. This evidence too is presumably ex[]onerating. In dealing with scientific evidence, it either matches you, or it doesn't, and if it doesn't you should be a[c]quitted, and this is evidence that is not too late to be discovered. I will forever have these scars on my body to prove my innocence.

23   *Id.*

24   "**Ground Seven**: Sixth Amendment right to effective Counsel was violated by

25   Counsel failing to object to in-court identification of co-defendant and/or moving for a

26   mistrial." *Id.* at 124.

27
28

> On the night of the robbery, Det. Barber showed Mr. Arias one single picture of my wife and asked if he recognized her. Mr. Arias specifically stated, "No. I have never seen her before in my life." Shortly after that, Mr. Arias was taken to the police

station and was shown a six[-]pack photo line-up that included my wife's photo, again. Mr. Arias did [not] identify her prior to trial, while sitting in the county jail with zero evidence, I requested that Mr. Arias be brought in for a pre-trial identification process, to which the prosecutor stated, "We're not bringing him in, we already know he can't ID anybody, he invoked his rights and wants nothing to do with this trial.["]

Six months later, the State calls Mr. Arias to testify. While Mr. Arias was approaching the witness stand, Det. Barber jumps up, grabs Mr. Arias by the arm, whispers into his ear causing Mr. Arias to turn and look over his shoulder directly at my wife. Mr. Arias looks back at Barber, nods his head then proceeds to the stand. After Mr. Arias testifies as to how he was robbed the State asked him if he recognizes the female who lured him into an alley, and Mr. Arias identified my wife as that female.

Had my attorney objected to that identification, and/or requested a mistrial, we could have held a Dess[u]reau[lt] hearing to have the judge determine the reliability of the ID. We were roadblocked by the State from having the opp[o]rtunity to challenge the ID before trial.

That ID was paramount to both my wife's and my conviction, and it was a dirty move by the State. In this case, cross-examination was rendered moot as a challenge, as we provided the jury with more than enough evidence that the ID was fabricated. We literally all but called him a liar.

I have been trying for years to obtain a copy of the CCTV footage at my trial that clearly shows Det. Barber grabbing Mr. Arias by the arm, whispering to him, causing him to look at my wife, but have been impeded every step of the way. Two motions to compel have gone unanswered, and letters to the prosecutor's office have gone unanswered.

Without that identification, there is no conviction.

*Id.* at 124-25.

"**Ground Eight**: Sixth Amendment right to effective counsel was violated by counsel failing to inform [Petitioner] of [his] right to testify and by refusing to let [him] testify." *Id.* at 126. Petitioner writes that he informed his counsel of his desire to testify about the "complete history" with the officers involved. *Id.* He continues that, after the victim identified his codefendant, he reiterated his wish to testify and to explain to the jury that the prosecution was vindictive. *Id.* at 127. He asserts that his counsel never informed him of his constitutional right to testify and instead insisted he could not testify. *Id.*

- 7 -

1

**TIMELINESS**

2      Whether a petition is time-barred by the statute of limitations is a threshold issue

3    that must be resolved before considering other procedural issues or the merits of the

4    individual's claim. *See White v. Klitzkie,* 281 F.3d 920, 921-22 (9th Cir. 2002). The

5    Anti-Terrorism and Effective Death Penalty Act's (AEDPA) one-year statute of limitations

6    applies here. *See* 28 U.S.C. § 2244(d)(1); *Furman v. Wood*, 190 F.3d 1002, 1004 (9th Cir.

7    1999). The limitations period begins to run on the date when "the judgment became final

8    by the conclusion of direct review or the expiration of the time for seeking such review."

9    § 2244(d)(1)(A). "The time during which a properly filed application for State

10   post-conviction or other collateral review with respect to the pertinent judgment or claim

11   is pending shall not be counted toward any period of limitation." § 2244(d)(2).

12      Petitioner timely appealed his convictions and sentences. (Doc. 23-1 at 20.)

13   Petitioner's convictions and sentences were final ninety days after December 1, 2015. *See*

14   § 2244(d)(1)(A); U.S. Sup. Ct. R. 13(1); *Hemmerle v. Schriro*, 495 F.3d 1069, 1074 (9th

15   Cir. 2007). Petitioner timely filed his notice for PCR before January 29, 2016. (Doc. 23-1

16   at 38.) On July 23, 2019, the Arizona Court of Appeals issued its mandate on Petitioner's

17   PCR petition. *Id.* at 62; *see Menendez v. Ryan*, No. CV-14-2436-PHX, 2015 WL 8923410,

18   at *9-10 (D. Ariz. Oct. 20, 2015), *R. & R. accepted by* 2015 WL 8758007, at *5 (D. Ariz.

19   Dec. 15, 2015). The one-year limitations period under the AEDPA was statutorily tolled to

20   July 23, 2019. *See* § 2244(d)(2). Petitioner's initial petition for writ of habeas corpus was

21   filed on April 15, 2020, (*see* Doc. 1) well within the AEDPA's one-year limitations period.

22      Hence, the Amended Petition is timely.

23   **EXHAUSTION/PROCEDURAL DEFAULT**

24      Respondents urge that all but one part of Petitioner's due-process claims are

25   procedurally defaulted without excuse or are not cognizable in a federal habeas proceeding.

26   (Doc. 23 at 9-13.) Additionally, Respondents contend that Petitioner's claim that his

27   counsel was ineffective in preventing him from testifying is also procedurally defaulted.

28   *Id.* at 10, 13-14. As set forth below, this Court agrees except it finds that Ground One was

1 exhausted without procedural default.

2 **<u>Legal Principles</u>**

3      A district court may consider a petitioner's application for a writ of habeas corpus

4 only if they have "exhausted the remedies available in the courts of the State."

5 § 2254(b)(1)(A). The exhaustion requirement prevents unnecessary federal court

6 adjudication and affords states the opportunity to correct a constitutional violation. *Rose v.*

7 *Lundy*, 455 U.S. 509, 518 (1982).

8      To exhaust a claim, the petitioner must "fairly present" it in each appropriate state

9 court, alerting the courts to its federal nature. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). In

10 Arizona, a claim not involving a life sentence or death penalty is exhausted if it is presented

11 to the Arizona Court of Appeals; it need not be appealed to the Arizona Supreme Court.

12 *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). For a claim to be fairly presented,

13 the petitioner must have clearly stated its federal basis and nature, along with relevant facts,

14 and the claim must be the "substantial equivalent" to the one presented to the state. *Picard*

15 *v. Connor*, 404 U.S. 270, 278 (1971); *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011).

16 If evidence puts the claim in significantly different legal or evidentiary posture, the state

17 must have an opportunity to examine it. *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir.

18 2014). It is insufficient to merely present a state law claim that is "largely coextensive"

19 with the federal claim. *Fields v. Washington*, 401 F.3d 1018, 1022-23 (9th Cir. 2005). If a

20 state law claim is *identical* with the federal claim, then raising only the state law claim may

21 be sufficient to exhaust the federal clam. *Sanders v. Ryder*, 342 F.3d 991, 1000 (9th Cir.

22 2003).

23      A petitioner who fails to follow a state's procedural requirements for presenting a

24 claim deprives the state court of an opportunity to address the claim in much the same

25 manner as a petitioner who fails to exhaust his state remedies. Thus, to prevent a petitioner

26 from subverting the exhaustion requirement by failing to follow state procedures, a claim

27 not presented to the state courts in a procedurally correct manner is deemed procedurally

28 defaulted and is generally barred from habeas relief. *See Coleman v. Thompson*, 501 U.S.

722, 731-32 (1991).

Claims may be procedurally barred from federal habeas review based upon either an express or implied bar. *See Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010). If a state court expressly applied a procedural bar when a petitioner attempted to raise a claim in state court, and the procedural bar is both independent and adequate, review of the merits of the claim by a federal habeas court is generally barred. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court."). An implied procedural bar may be applied to unexhausted claims where state procedural rules make a return to state court futile. *Coleman*, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); *Franklin v. Johnson*, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies . . . if it is clear that the state court would hold the claim procedurally barred.'" (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989))).

In Arizona, claims not previously presented to state courts on either direct appeal or collateral review are generally barred from federal review because an attempt to present them to the state court would be futile unless they fit in a narrow category of claims for which a successive or untimely petition is permitted. *See* Ariz. R. Crim. P. 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief, except for narrow exceptions), 33.2(a) (same), 32.4(b)(3) (time bar) 33.4(b)(3) (same). Because Arizona's preclusion rules are both independent and adequate, their application to a claim by an Arizona court or their operation precluding a return to state courts to exhaust a claim will procedurally bar subsequent review of the merits of that claim by a federal habeas court. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) (determinations made under Arizona's procedural default rule are independent of federal law); *see also Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (rejecting assertion that Arizona courts' application of procedural default rules were "unpredictable and irregular"); *State v. Mata*,

916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules are strictly applied in post-conviction proceedings). Arizona's time bar under Rules 32.4 and 33.4 are an additional bar that would make a return to state court fruitless. *See, e.g.*, *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) (holding that if Arizona habeas petitioner "has any unexhausted claims" they are "procedurally defaulted . . . because he is now time-barred under Arizona law from going back to state court"); *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (observing timeliness under Rule 32.4(a) as grounds for dismissal of PCR petition, distinct from preclusion under Rule 32.2(a)).

**<u>Procedural Status of Petitioner's Claims</u>**

**Ground One:** Petitioner claims his due process rights were violated because there was insufficient evidence presented at his trial to sustain his convictions. (Doc. 6-1 at 105.)

In Petitioner's opening brief to the Arizona Court of Appeals, he alleged the trial court erred by denying his motion for judgment of acquittal because there was insufficient evidence to sustain the convictions. (Doc. 6 at 79-82.) The Court of Appeals decided this claim on its merits. *Cordova*, 2015 WL 1394696, at ¶ 42. Petitioner argues that the state law claim that the State did not present sufficient evidence is identical to the federal due process claim asserted here. (Doc. 24 at 5.) This Court agrees. *See State ex rel. Romley v. Superior Court*, 836 P.2d 445, 449 (Ariz. App. 1992); *State v. Tison*, 633 P.2d 355, 361-62 (Ariz. 1981) (applying standard from *Jackson v. Virginia*, 443 U.S. 307 (1979), to consider whether evidence was insufficient to support conviction). Since the federal claim is identical to the claim raised before the state courts, the Court consider it exhausted. *See Sanders*, 342 F.3d at 1000.

Thus, this Court will treat the claim in Ground One as properly exhausted and not procedurally barred. Its merits are discussed below.

**Ground Two:** In the first part of Ground Two, Petitioner claims his due process rights were violated because officers illegally arrested him. (Doc. 6-1 at 110.) In the second part, Petitioner claims his due process rights were violated because the State admitted illegally seized evidence at his trial. *Id.*

Petitioner did not present his claims as Fourteenth Amendment claims to the state court; instead, he presented them as Fourth Amendment claims. (Doc. 6 at 35-44, 45-59.) Fourth Amendment claims, however, can only be reviewed in a § 2254 proceedings "if the state court proceeding denied the applicant an 'opportunity for full and fair litigation of a Fourth Amendment claim.'" *Ewell v. Scribner*, 490 Fed. App'x 891, 892-93 (9th Cir. 2012) (quoting *Stone v. Powell*, 428 U.S. 465, 482 (1976)). There is no indication that the state did not provide a full and fair litigation of the Fourth Amendment claims. Thus, they would not be cognizable here.

This Court determines that Petitioner did not present the claims alleged in Ground two to the Arizona Court of Appeals because he did not assert them as due process violations, only Fourth Amendment violations. Petitioner cannot return to the state court to exhaust this claim because Arizona's procedural rules would bar him. As such, this Court concludes that these claims are technically exhausted but procedurally defaulted. To the extent he may wish to present Fourth Amendment claims here, they are not cognizable. *See Ewell*, 490 Fed. App'x at 892-93.

As explained below, this Court determines there are no grounds upon which the district court can excuse the procedural default of the claims alleged in Ground Two.

**Ground Three:** Petitioner claims his due process rights were violated because the state presented perjured testimony and omitted exculpatory evidence from the grand jury. (Doc. 6-1 at 119.)

In Petitioner's opening brief to the Arizona Court of Appeals, he alleged his due process rights were violated because he stood trial on an indictment obtained by omitting exculpatory evidence and presenting perjured testimony. (Doc. 6 at 59-68.)

The Arizona Court of Appeals denied Petitioner's claims reasoning:

> Cordova reasserts his argument that the state failed to present clearly exculpatory evidence. This claim cannot be raised on direct appeal; therefore, we do not address it.
>
> . . .
>
> Detective Barber never stated or insinuated to the grand jury that Rodriguez had made a confession. Nor did he state that the

1
2
3
4

> black cloth and red bandana had been used by J.A.'s assailants as masks. There is no evidence to suggest that Barber's testimony was false or that he knew it was false. And because Cordova has been found guilty beyond a reasonable doubt, "we will not now review the finding of probable cause made by the grand jury."

5    *Cordova*, 2015 WL 1394696, at ¶¶ 25, 38 (citations omitted).

6         Petitioner's claim that exculpatory evidence was omitted from the grand jury

7    presentation was procedurally barred from review and Petitioner would be unable to return

8    to the state court. As explained below, this Court determines there are no grounds upon

9    which the district court can excuse the procedural default this claim.

10        This Court finds that Petitioner presented his claim that perjury evidence was

11   submitted to the grand jury as alleged in Ground Three to the state courts. This Court will

12   treat this claim as properly exhausted. Its merits are discussed below.

13        **Ground Four:** Petitioner claims that, because the State "would have had literally

14   nothing to present to the jury" at a trial against only him, the trial court violated his due

15   process rights by failing to sever him from his codefendant for trial. (Doc. 6-1 at 121.)

16        In Petitioner's opening brief to the Arizona Court of Appeals, Petitioner alleged the

17   trial court abused its discretion by denying his motion to sever the defendants. (Doc. 6 at

18   72-79.) He argued that he could not receive a fair trial because he was prejudiced by his

19   codefendant's statements, his relationship with the codefendant, and the "rub-off" from

20   evidence against his codefendant. *Id.* Petitioner mentioned federal due process when listing

21   constitutional guarantees, such as the right to confront accusers, present a complete

22   defense, and the right to subpoena witnesses, *id.* at 75-76; however, his argument seemed

23   to rely on the Confrontation Clause. *Id.* at 77.

24        The Arizona Court of Appeals denied Petitioner's claim reasoning:

25        > The trial court's limiting instructions also protected against any potential for prejudice resulting from J.A.'s identification of Rodriguez. And, as discussed above, Rodriguez's statements, as presented through the testimony of Officer Brady, did not facially incriminate Cordova. Finally, the video of Cordova and Rodriguez arriving at UMC was not testimonial in nature. Therefore, admission of the video did not present a Confrontation Clause problem requiring severance of the trials.

26
27
28

1
2

       The court did not err in denying Cordova's renewed motions
to sever during trial.

3

*Cordova*, 2015 WL 1394696, at ¶ 32 (citations omitted).

4

       This Court determines that Petitioner did not present his claim alleged in Ground

5

Four to the Arizona Court of Appeals because he did not sufficiently alert them to the

6

federal due process claim and does not appear to be arguing the Confrontation Clause claim

7

here.[3] *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Shumway v. Payne*, 223 F.3d

8

982, 988 (9th Cir. 2000). Further, Petitioner does not contend that the federal due process

9

rights are identical to either the Confrontation Clause rights or the right to severance under

10

the Arizona Rules of Criminal Procedure, such that this would be saved under *Sanders*,

11

342 F.3d at 1000. (Doc. 24 at 31-34.) Petitioner cannot return to the state court to exhaust

12

this claim because it is barred by Arizona's procedural rules. As such, this Court concludes

13

that this claim is technically exhausted but procedurally defaulted.

14

       As explained below, this Court determines there are no grounds upon which the

15

district court can excuse the procedural default of the claims alleged in Ground Four.

16

       **Ground Five:** Petitioner claims ineffective assistance of trial counsel for failing to

17

present third-party culpability evidence. (Doc. 6-1 at 122.)

18

       In Petitioner's PCR petition, he claimed ineffective assistance of counsel for failing

19

to present exculpatory evidence of a culpable third party. *Id.* at 34-36. The post-conviction

20

court dismissed Petitioner's claim on the merits. *Id.* at 66-67.

21

       In his petition for review before the Arizona Court of Appeals, Petitioner alleged

22

ineffective assistance of trial counsel based on failure to present third-party culpability

23

evidence. *Id.* at 74-75. The court of appeals adopted the post-conviction court's ruling.

24

*Cordova*, 2018 WL 4781486, at ¶ 4.

25

       This Court determines that Petitioner presented his claim alleged in Ground Five to

26

27

28

---

[3] Petitioner does seem to raise a Confrontation Clause issue in his reply. (Doc. 24 at 32.) The Court will not consider this argument because it was raised for the first time in Petitioner's reply. *Elliot v. Ryan*, No. CV 10-2326-PHX, 2011 WL 4829409, at *3 n.4 (D. Ariz. Aug. 30, 2011) (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *Lewis v Witek*, 927 F. Supp. 1288, 1291 n.2 (C.D. Cal. 1994)).

the state courts. The Court will treat Ground Five as properly exhausted. Its merits are discussed below.

**Ground Six:** Petitioner claims ineffective assistance of trial counsel for failing to call an expert or medical witness to demonstrate that the victim did not shoot Petitioner. (Doc. 6-1 at 123.)

In Petitioner's PCR petition, he claimed ineffective assistance of counsel for counsel not calling an expert or medical witness to show the victim's gun could not have shot Petitioner. *Id.* at 37-38. The post-conviction court concluded that Petitioner had failed to state a colorable claim. *Id.* at 69. The appellate court adopted the post-conviction court's ruling on this claim. *Cordova*, 2018 WL 4781486, at ¶ 4.

This Court determines that Petitioner presented the claim alleged in Ground Six to the state courts. The Court will treat Ground Six as properly exhausted. Thus, its merits are discussed below.

**Ground Seven:** Petitioner claims ineffective assistance of trial counsel because she neither objected to the in-court identification of his codefendant nor moved for a mistrial after said identification. (Doc. 6-1 at 124.)

In Petitioner's PCR petition, he claimed ineffective assistance of counsel for failing to object to the in-court identification of his codefendant or move for a mistrial after the identification. *Id.* at 38-41. The post-conviction court dismissed Petitioner's claim, concluding his counsel had acted reasonably under prevailing professional norms. *Id.* at 70-71. In his petition for review before the Arizona Court of Appeals, Petitioner raised the same allegations. *Id.* at 78-79. The court of appeals adopted the post-conviction court's ruling. *Cordova*, 2018 WL 4781486, at ¶ 4.

This Court determines that Petitioner presented his claim alleged in Ground Seven to the state courts. The Court will treat Ground Seven as properly exhausted. Its merits are discussed below.

**Ground Eight:** Petitioner claims ineffective assistance of trial counsel because his counsel failed to inform him of his right to testify and refused to let him testify. (Doc. 6-1

at 126.)

In Petitioner's state PCR petition, he claimed ineffective assistance of counsel for failing to inform him he had a right to testify, refusing to let him testify, and advising him to not testify. *Id.* at 41. The post-conviction court dismissed Petitioner's claim, reasoning:

> Cordova claims in his petition that he wanted to testify at Court and Ms. Bond wouldn't let him. Before the trial, Ms. Bond arranged for to [sic] prepare Cordova for testifying. During trial, he says she told him she did not see a need to put him on the stand. Although "disagreements in trial strategy will not support a claim of ineffective assistance of counsel, . . . certain basic decisions transcend the label 'trial strategy' and are exclusively the province of the accused: namely, the ultimate decisions on whether to plead guilty, whether to waive a jury trial, and whether to testify." *State v. Nirschel*, 155 Ariz. 206, 208, 745 P.2d 953, 955 (1987), *quoting State v. Lee*, 142 Ariz. 210, 215, 689 P.2d 153, 158 (1984).
>
> However, mere regrets about the decision not to testify are insufficient to raise a colorable claim of ineffective assistance. *State v. Schurz*, 176 Ariz. 46, 58, 850 P.2d 156, 168 (1993). "[W]hen the defendant and his counsel come to the conclusion for any reason that it would be better for the defendant not to testify, the defendant cannot later claim with the benefit of hindsight that the decision to keep him off the stand constituted reversible error." *State v. Martin*, 102 Ariz. 142, 147, 426 P.2d 639, 644 (1967).
>
> Unlike the requirements in some states, in Arizona, a trial judge is not required to affirmatively determine that a defendant is aware of and wishes to relinquish the right to testify by way of an on-the-record waiver. *State v. Gulbrandson*, 184 Ariz. 46, 64, 906 P.2d 579, 597 (1995). However, the court has stated that "defendant must make his desire to testify known at trial and cannot allege this desire as an afterthought." *Id., citing Martin, supra. See also State v. Allie*, 147 Ariz. 320, 328 (1985). Therefore, under Arizona case law, because Cordova did not voice his wish to testify during the trial, he may not raise it as a complaint now.
>
> Cordova further alleges his counsel was ineffective for advising him not to testify. If Cordova had testified at trial, he would have been subject to cross-examination regarding a previous felony conviction. This is a reasoned basis for counsel to recommend that a defendant forgo testifying.

*Id.* at 71-72 (alterations in original).

In his petition for review before the Arizona Court of Appeals, Petitioner alleged ineffective assistance of trial counsel based on the same grounds. *Id.* at 74, 79. The

appellate court adopted the post-conviction court's ruling and stated:

> We write further, however, with regard to Cordova's claim that counsel "refused to let [him] testify." As the trial court correctly noted, our supreme court has held that "a defendant must make his desire to testify known at trial and cannot allege this desire as an afterthought," and a court is not required "to have a defendant make an on-the-record waiver" of that right. *State v. Gulbrandson*, 184 Ariz. 46, 65 (1995); *see also State v. Allie*, 147 Ariz. 320, 328 (1985). And, even where (as Cordova alleges occurred here), counsel simply refused to allow a defendant to testify, a defendant is nonetheless required to "make his objection known at trial." *State v. Martin*, 102 Ariz. 142, 147 (1967).
>
> Although Cordova urges us to "overrule" *Gulbrandson*, *Allie*, and *Martin*, we have no authority to do so. *State v. Newnom*, 208 Ariz. 507, ¶ 8 (App. 2004). Additionally, Cordova has cited nothing suggesting he was unaware of his right to testify, and the trial court was not required to accept his conclusory assertion that counsel "didn't let" him testify. *See State v. Schurz*, 176 Ariz. 46, 58 (1993) (to raise colorable claim of ineffective assistance, defendant must show unawareness of right to testify or counsel's deprivation of right); *State v. Donald*, 198 Ariz. 406, ¶ 21 (App. 2000) (to warrant evidentiary hearing, Rule 32 claim "must consist of more than conclusory assertions").

*Cordova*, 2018 WL 4781486, at ¶¶ 4-6.

This Court determines that Petitioner presented his claims alleged in Ground Eight to both the post-conviction and appellate courts. The Court will treat the claims in Ground Eight as properly exhausted. However, the claims that the attorney prevented him from testifying and that the attorney failed to inform him of his right to testify are procedurally defaulted because the state court relied on "independent and adequate state procedural grounds"—waiver. *See Coleman*, 501 U.S. at 730. Respondents only assert that the claim that trial counsel refused to permit testimony was procedurally defaulted. (Doc. 23 at 13-14.) Because Respondents have not presented procedural default as to the claim that trial counsel failed to inform Petitioner of his right to testify, this Court will consider it waived and reach its merits below. *See Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005).

As explained below, this Court determines there are no grounds upon which the district court can excuse the procedural default in Ground Eight.

- 17 -

**The Procedural Default Cannot be Excused**

Federal habeas review of a procedurally defaulted claim is barred unless the default is excused. A procedural default may be excused if a habeas petitioner establishes either (1) "cause" and "prejudice," or (2) that a fundamental miscarriage of justice has occurred. *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992). "Cause" that is sufficient to excuse a procedural default is "some objective factor external to the defense" which precludes a petitioner's ability to pursue the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" in the habeas context means actual, objective harm resulting from the alleged error. *United States v. Frady*, 456 U.S. 152, 170 (1982) (habeas petitioners "shoulder the burden of showing, not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage" and infected state proceedings with errors of constitutional dimension). A fundamental miscarriage of justice may occur where a constitutional violation has probably resulted in the conviction of an innocent petitioner. *Murray*, 477 U.S. at 496 (merits of defaulted claim could be reached "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent"). "[A] petitioner does not meet the threshold requirement [of establishing actual innocence] unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). The actual innocence gateway requires that a petitioner present new evidence that is not merely cumulative or speculative. *Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013).

Petitioner argues that he was precluded from pursuing claims in the state court. (Doc. 24 at 13.) He claims that the state paralegal told him the appellate standard of review would be abuse of discretion because he was "appealing to the courts to reverse the rulings of the trial courts for mishandling your constitutional, or state law violations." *Id.* This is not cause because it did not prevent him from pursuing claims in the state court. *See Murray*, 477 U.S. at 488.

Petitioner claims that he is actually innocent of the charges, pointing to the lack of

incriminating evidence. (Doc. 24 at 13.) He urges the district court to consider the discrepancies in descriptions and lack of physical evidence connecting him to the crime scene. *Id.* at 12-13. Petitioner does not argue there is any new evidence and only points to information that was presented to the jury, either through witnesses or argument. (Doc. 23-2 at 60, 73, 75, 120, 128; Doc. 23-3 at 13, 15, 136; Doc. 23-4 at 36, 60, 67.) Petitioner has failed to persuade the Court that no juror would have voted to find him guilty beyond a reasonable doubt in light of new evidence because he does not present any new evidence. *See Schlup*, 513 U.S. at 329; *Larsen*, 742 F.3d at 1096. Accordingly, Petitioner has not presented any grounds upon which this Court may excuse his failure to exhaust or procedural default. Thus, the Court recommends dismissing the claims alleged in grounds Two, and Four, and parts of grounds Three and Eight, as explained above.

**MERITS**

This Court determines that Petitioner's claims in grounds One, Five, Six, and Seven, and part of grounds Three and Eight are exhausted and not procedurally defaulted. As explained below, this Court concludes the remaining claims are without merit and should be dismissed.

**Merits Review Under AEDPA**

Congress intended the AEDPA to foster federal-state comity and further society's interest in the finality of criminal convictions. *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007) ("[AEPDA's] design is to 'further the principles of comity, finality, and federalism.'") (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003)). Congress's very purpose in enacting the AEPDA was "to restrict the availability of habeas corpus relief." *Greenawalt v. Stewart*, 105 F.3d 1268, 1275 (9th Cir. 1997), *abrogated on other grounds as recognized by Jackson v. Roe*, 425 F.3d 654, 658-61 (9th Cir. 2005).

In the AEDPA, Congress set forth "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions must be given the benefit of the doubt." *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011) (cleaned up). The district court may grant a writ of habeas corpus, "only on the basis of some

transgression of federal law binding on the state courts." *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985).

The AEDPA limits the availability of habeas relief for a claim adjudicated on the merits to circumstances where the state court's disposition either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). Petitioner bears the burden of proving that his claims fit one of these criteria. *Pinholster*, 563 U.S. at 181; *Lambright v. Blodgett*, 393 F.3d 943, 969 n. 16 (9th Cir. 2004).

A state-court decision is "contrary to" clearly established federal law when the court applied a rule of law that contradicts the governing law set forth in Supreme Court precedent, or encountered a set of facts that are "materially indistinguishable" from a Supreme Court decision and yet reached a different result than the Supreme Court. *Early v. Packer*, 537 U.S. 3, 8 (2002). Under § 2254's "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "Rather, that application must also be unreasonable." *Id.* "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). *Richter* explained:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement.

*Id*. at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id*. at 102. Section 2254(d)(2) sets "a daunting standard—one that will be satisfied in relatively few cases." *Loher v. Thomas*, 825 F.3d 1103, 1112 (9th Cir. 2016) (*Hernandez v. Holland*,

750 F.3d 843, 857 (9th Cir. 2014)).

In determining whether the state court's resolution of a claim was contrary to, or an unreasonable application of, clearly established federal law, this Court must review the last reasoned state court judgment addressing the claim. *Cook v. Schriro*, 538 F.3d 1000, 1015 (9th Cir. 2008) (citing *Ylst*, 501 U.S. at 803). The reviewing federal court is to be "particularly deferential to [its] state court colleagues." *Loher*, 825 F.3d at 1112 (*Hernandez*, 750 F.3d at 857). The federal habeas court presumes the state court's factual determinations are correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *See* § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *see also, Miller-El*, 545 U.S. at 240 (describing standard as deferential and "demanding," although not impossible).

**Ground One:** Petitioner asserts that the evidence admitted was insufficient to show he had committed the offenses and thus his convictions violated due process. (Doc. 6-1 at 105-109.) The Arizona Court of Appeals denied Petitioner's claims, reasoning:

> Rule 20(a), Ariz. R. Crim. P., provides that the court "shall enter a judgment of acquittal . . . if there is no substantial evidence to warrant a conviction." "Substantial evidence is more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990), *quoting State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980). We must decide "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 66, 796 P.2d at 868, *quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We will reverse "only if there is 'a complete absence of probative facts to support a conviction.'" *State v. Paris-Sheldon*, 214 Ariz. 500, ¶ 32, 154 P.3d 1046, 1056 (App. 2007), *quoting State v. Alvarez*, 210 Ariz. 24, ¶ 10, 107 P.3d 350, 353 (App. 2005). "When reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *State v. Lee*, 189 Ariz. 590, 603, 944 P.2d 1204, 1217 (1997).

> Although the evidence against Cordova was circumstantial, "[b]oth direct and circumstantial evidence may be sufficient to

- 21 -

meet the [substantial evidence] test. There is no distinction as to the weight to be assigned to each." *State v. Thornton*, 108 Ariz. 119, 120, 493 P.2d 902, 903 (1972). We conclude there was substantial evidence to support Cordova's convictions, and the trial court did not err by denying his motion for a judgment of acquittal.

*Cordova*, 2015 WL 1394696, at ¶¶ 41-42 (alterations in *Cordova*).

"[E]vidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Jackson*, 443 U.S. at 319). In habeas, the standards of *Jackson* are applied "with an additional layer of deference," so that it may only be overturned if "objectively unreasonable." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005); *see Parker*, 567 U.S. at 43. Thus, "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

Here, Petitioner alleges that the state court unreasonably applied the law because the state did "not offer the jury a single legitimate piece of evidence connecting [him] to the crime scene, let alone an actual culpable role in the robbery." (Doc. 6-1 at 109.) Petitioner acknowledges there was sufficient evidence to show the victim was robbed at gun point by at least two individuals, instead arguing the evidence never connected Petitioner to the incident. *Id.*

After viewing the evidence admitted at trial in the light most favorable to the prosecution, it showed the following. In November 2013, the victim was selling alarm systems door-to door in Tucson, Arizona. (Doc. 23-2 at 34-35.) A woman, he later identified as Petitioner's codefendant,[4] waved him down, and he followed her around a corner. *Id.* at 38, 57. The victim heard "chh-chh" and saw two men pointing guns at him. *Id.* at 38. He could only see "their eyes and the gun barrels." *Id.* They were wearing

---

[4] The victim had been unable to identify the woman prior to trial, despite two opportunities to do so. (Doc. 23-2 at 62, 71.) However, a reasonable juror could credit the in-court identification, believing that in-person identifications differ from photographic ones.

1   bandanas over their faces and hoodies over their heads, and their clothing was dark. *Id.* at

2   41-42, 74. He stated that one of the men was five foot, ten inches tall and the other was

3   about six foot in height. *Id.* at 72. The men demanded his wallet and phone, which he

4   handed over. *Id.* at 39. One of the men threw the victim down and patted him down. *Id.* at

5   43. When the man was on top of him, the victim could see his arm and that he was black.[5]

6   *Id.* at 69. The other said "cap him," which the victim interpreted as an instruction to kill

7   him. *Id.* at 44. The victim drew his weapon and shot at the man on top of him. *Id.* at 45. He

8   then stood and fired a few more shots toward the other man running away. *Id.* at 45-46.

9       Petitioner and his codefendant arrived at University Medical Center (UMC) about

10  fifteen minutes after the first 9-1-1 call reporting shots near the robbery came in.[6] (Doc.

11  23-2 at 118, 135, 138; Doc. 23-3 at 76, 127.) Petitioner had been shot in the back and had

12  a black hooded sweater with a hole surrounded by blood. (Doc. 23-2 at 125-26; Doc. 23-3

13  at 130.)

14      This Court must look to state law for "the substantive elements of the criminal

15  offense." *Johnson*, 566 U.S. at 655 (quoting *Jackson*, 443 U.S. at 324 n.16). Accordingly,

16  "[a] person commits robbery if in the course of taking any property of another from his

17  person or immediate presence and against his will, such person threatens or uses force

18  against any person with intent either to coerce surrender of property or to prevent

19  resistance" to the taking or retaining of property. A.R.S. § 13-1902(A). "'Force' means any

20  physical act directed against a person as a means of gaining control of property." A.R.S.

21  § 13-1901(A). "A person commits aggravated robbery if in the course of committing

22  robbery . . . , such person is aided by one or more accomplices actually present." A.R.S.

23  § 13-1903(A). "A person commits armed robbery if, in the course of committing robbery

24  . . . , such person or an accomplice: 1. Is armed with a deadly weapon or a simulated deadly

25  
─────────────────────────

26  [5] The victim originally identified both man as black, but then later said it was dark and he
    only saw their eyes. (Doc. 32-2 at 41, 69, 73.) The Court will note that Petitioner is referred

27  to through the trial as Hispanic. *Id.* at 22. Further, Petitioner notes that he is five foot, nine
    inches in height. (Doc. 6-1 at 105.)

28  [6] Petitioner argues he was prejudiced by the trial judge stating an opinion in open court.
    (Doc. 6-1 at 107.) However, that exchange "took place at the bench between Court and
    Counsel, out of the hearing of the jurors." (Doc. 23-3 at 32-35.)

weapon; or 2. Uses or threatens to use a deadly weapon or dangerous instrument or a simulated deadly weapon." A.R.S § 13-1904(A). Robbery, armed robbery, and aggravated robbery are all felonies. §§ 13-1902(B), 13-1903(B), 13-1904(B). "A person commits kidnapping by knowingly restraining another person with the intent to . . . otherwise aid in the commission of a felony . . . ." A.R.S. § 13-1304(A). "'Restrain' means to restrict a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such person." A.R.S. § 13-1301(A)(2). Restraint through "[p]hysical force, intimidation or deception" is without consent. *Id.*

Petitioner acknowledges that the evidence is sufficient to prove that someone robbed the victim at gunpoint with an accomplice. (Doc. 6-1 at 109.) Thus, Petitioner admits that the evidence demonstrates that someone committed robbery, armed robbery, and aggravated robbery. *See* §§ 13-1901 to 13-1904. It follows, but was not explicitly stated, that the evidence was sufficient to confirm that the victim's movement was restrained through force or intimidation in aid of the commission of a felony, such as robbery, armed robbery, or aggravated robbery. Hence, the evidence also shows that someone kidnapped the victim. *See* §§ 13-1301(A)(2), 13-1304(A). Petitioner contends that evidence does not implicate him in these offenses. (Doc. 6-1 at 109.) This Court disagrees.

The state court was not objectively unreasonable in concluding that a reasonable juror could have found that Petitioner committed the offenses beyond a reasonable doubt. The Court would not characterize the evidence against Petitioner as strong, and even the state appellate court characterized it as "circumstantial." *See Cordova*, 2015 WL 1394696, at ¶ 42. However, the evidence did show that Petitioner was at the hospital with a bullet wound shortly after the offense occurred, and that he had likely been wearing a dark hooded sweatshirt when he was shot, similar to the victim's descriptions. The evidence did not establish which assailant the victim had shot, but the jury could reasonably have found that the victim shot Petitioner as he ran away, which would have explained the trajectory and entrance wound. Further, he matched the approximate height description of one of the

assailants. Finally, he was with his codefendant at the hospital, whom the victim identified at trial as a participant in the robbery. The victim was vigorously cross-examined about the identification.

Petitioner has not shown that the state courts' rulings were an unreasonable application of federal law. Hence, the claim in Ground One has no merit.

**Ground Three:** Petitioner alleges that his due process rights were violated when the State presented perjured testimony to the grand jury. (Doc. 6-1 at 119.)

In Petitioner's opening brief to the Arizona Court of Appeals, Petitioner alleged his due process rights were violated because he had to stand trial on an indictment based on perjured testimony. (Doc. 6 at 59-68.) The Arizona Court of Appeals denied Petitioner's claims, reasoning:

> Detective Barber never stated or insinuated to the grand jury that Rodriguez had made a confession. Nor did he state that the black cloth and red bandana had been used by J.A.'s assailants as masks. There is no evidence to suggest that Barber's testimony was false or that he knew it was false. And because Cordova has been found guilty beyond a reasonable doubt, "we will not now review the finding of probable cause made by the grand jury."

*Cordova*, 2015 WL 1394696, at ¶ 38 (citations omitted).

This claim is without merit. First, the Fourteenth Amendment's due process clause does not guarantee indictment by grand jury. *See Hurtado v. California*, 110 U.S. 516, 538 (1884); *see also Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 (2000) (not addressing indictment requirement); *Guatt v. Lewis*, 489 F.3d 993, 1003 n.10 (9th Cir. 2007) (pointing out that Supreme Court has not incorporated grand jury requirement to states). Second, assuming there was perjured testimony before the grand jury, it would have been harmless because Petitioner is not alleging structural error and a jury found beyond a reasonable doubt that he was guilty. *See United States v. Mechanik*, 475 U.S. 66, 70 (1986); *United States v. Bingham*, 653 F.3d 983, 998 (9th Cir. 2011). Thus, Petitioner has not shown that the state courts' rulings were an unreasonable application of federal law or clearly contrary to established federal law.

**Review of Ineffective Assistance of Counsel Claims Under AEDPA**

The Supreme Court set forth the clearly established federal law governing IAC claims in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Pinholster*, 563 U.S. at 189. To establish that counsel was constitutionally ineffective under *Strickland*, "a defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Deficient performance is established when counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

In determining deficiency, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 100-01 (1955)). To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. This requires courts to consider "the totality of the evidence before the . . . jury." *Id.* at 695. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 100. "This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.*

**Ground Five**: Petitioner claims his trial counsel was ineffective because she failed to present evidence of third-party culpability. (Doc. 6-1 at 122.) Petitioner claims that his counsel should have admitted evidence of two other robberies with similarities to the charged robbery. *Id.* According to Petitioner, the three robberies occurred days apart, in the same location, and with the same modus operandi. *Id.* The victims in the other two robberies were unable to identify Rodriguez as the female suspect. *Id.*

The post-conviction court explained the two robberies as follows:

> Detective Barber stated said [sic] that there had been two other robberies with a similar M.O. In one robbery, a Somali victim

was flagged down by a female and taken to the back of an apartment location where he was robbed by "what he thought were two black guys[."] In the second robbery, near the same area as the scene in the instant case, two guys ran up and knocked a victim down and took his phone; they were wearing hoodies and masks. Neither victim identified anyone as a perpetrator. (30). Rodriguez was in the photo lineup shown to the Somali victim, and he did not positively identify her as the female in his robbery. (32). Initially Barber reported the second victim said the two men in the second case were black, but then clarified he wasn't sure in that case and he didn't want to guess. The second robbery did not appear to involve a female accomplice, based on the two pages provided in this exhibit.

*Id.* at 64-65. The appellate court adopted the post-conviction court's ruling. *Cordova*, 2018 WL 4781486, at ¶ 4.

The state courts rejected Petitioner's claim. (Doc. 6-1 at 67.) First, the post-conviction court concluded Petitioner's counsel investigated the other robberies but decided to pursue a different strategy, which is not deficient performance. *Id.* Second, the court determined that Petitioner "likely would not have prevailed" in admitting the evidence; thus, Petitioner did not show prejudice. *Id.*

To be successful in the first instance, Petitioner needed to show that trial counsel's performance was deficient and that the trial court likely would have allowed third-party culpability evidence and that there is a reasonable probability that the jury would have returned a different verdict after seeing this evidence. *See Knowles*, 556 U.S. at 122. To prevail here, Petitioner must show that the state courts were unreasonable in their conclusion the trial counsel's performance was not deficient and there was no prejudice. *See Richter*, 562 U.S. at 100.

First, Petitioner is claiming that his counsel failed to sufficiently investigate the third-party evidence. (Doc. 6-1 at 122.) Petitioner faults counsel for not interviewing the witnesses (Doc. 24 at 39), but the duty to investigate is not limitless. *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (quoting *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995)). "A claim of failure to interview a witness . . . cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel." *Id.* (alteration in *Bragg*) (quoting *Eaggleston v. United States*, 798 F.2d 374, 376 (9th Cir.

1986)). Nonetheless, it does appear that trial counsel investigated the possible third-party culpability evidence by interviewing the officers. (Doc. 6-1 at 46-47.) But trial counsel abandoned this potential defense because, without a known culprit for the other robberies, it would have been more incriminating than exculpatory for Petitioner. This was a strategic decision, which does not show deficient performance. *See Strickland*, 466 U.S. at 689. Petitioner has not shown that the state court was objectively unreasonable in its application of *Strickland*'s first prong.

Second, Petitioner cites to *Mann v. Ryan*, 774 F.3d 1203 (9th Cir. 2014), to argue that the state court applied a prejudice standard that is contrary to established federal law. (Doc. 24 at 36, 38-39.) In *Mann*, the Ninth Circuit concluded that the district court erred in determining that Mann was not entitled to relief based on one of his ineffective-assistance-of-counsel claims. 774 F.3d at 1223. The court reasoned that the state post-conviction court applied a more-likely-than-not standard when determining prejudice, rather than a reasonable-probability standard. *Id.* at 1216. However, the Ninth Circuit reheard *Mann* and affirmed the district court's denial of habeas relief as to Mann's convictions and sentence. *Mann v. Ryan*, 828 F.3d 1143, 1161 (9th Cir. 2016) (en banc). The en banc panel determined that while the standard the state court considered was ambiguous, it was not clearly incorrect. *Id.* at 1147. The court stated that it was possible to read the state court's decision as comporting with clearly established law because reading the issues in context provided indication that the judge knew the proper standard but spoke in "direct terms . . . rather than in words designed to express degrees of probability." *Id.* at 1157. Further, the post-conviction judge was the same one who had imposed the sentence and was subsequently uniquely familiar with the facts and issues. *Id.* at 1157-58.

Here, the post-conviction court stated that the trial court "likely would have . . . precluded the third-party culpability evidence, had it been proffered." (Doc. 6-1 at 67.) This does create an ambiguity that the post-conviction court applied the incorrect standard when considering prejudice. However, the post-conviction court did state the correct standard when explaining *Strickland*. *Id.* at 62. Further, the post-conviction judge presided

1   over the trial and would have been the judge to rule on admitting evidence. *Id.* at 60, 115

2   (same judge ruled on motion to suppress as ruled on Rule 32 petition). Thus, he was in a

3   unique position as to the facts and issues. The post-conviction described the "considerably"

4   tenuous nature of the evidence. *Id.* at 67. Thus, at worst, the post-conviction court's

5   statements were ambiguous, which is insufficient to find that the court clearly misapplied

6   established federal law. *See Mann*, 828 F.3d at 1157.

7   Third, Petitioner has not shown that the post-conviction court was objectively

8   unreasonable in its determination. He does not argue there is a reasonable probability that

9   the trial court would have admitted the potential evidence. (Doc. 6-1 at 122.)

10   The right to introduce relevant evidence may be curtailed "if there is a good reason

11   for doing" so. *Clark v. Arizona*, 548 U.S. 735, 770 (2006). Trial judges are permitted to

12   exclude evidence if its probative value is outweighed by unfair prejudice, confusion of the

13   issues, or potential to mislead the jury. *Id.* In Arizona, "[a] defendant may not, in the guise

14   of a third-party culpability defense, simply throw strands of speculation on the wall and

15   see if any of them will stick." *State v. Goudeau*, 372 P.3d 945, ¶ 165 (Ariz. 2016) (quoting

16   *State v. Machado*, 246 P.3d 632, ¶ 16 n.2 (Ariz. 2011)). Defendants may only present

17   third-party culpability evidence if the evidence complies with Rules 401 and 403, Ariz. R.

18   Evid. *Machado*, 246 P.3d 632, ¶ 16. This mandates that "the proffered evidence must first

19   be relevant; that is, it must '*tend* to create a reasonable doubt as to the defendant's guilt.'"

20   *Goudeau*, 372 P.3d 945, ¶ 163 (quoting *State v. Gibson*, 44 P.3d 1001, ¶ 16 (Ariz. 2002)).

21   The trial courts have "discretion to exclude third-party culpability evidence if its probative

22   value is substantially outweighed by the danger of 'unfair prejudice, confusing the issues,

23   misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

24   evidence.'" *Id.* (quoting Ariz. R. Evid. 403).

25   Here, the post-conviction court concluded that the evidence of third-party

26   culpability was so tenuous as to cause undue confusion of the issues or mislead the jury.

27   (Doc. 6-1 at 67.) No one had been charged in the other robberies, and there was no evidence

28   that anyone even knew the identity of the other robbers. *Id.* at 66. Also, the exact location

1  and times of the robberies was not presented to either the state courts or this Court. *Id.* at

2  46-47, 66. Accordingly, Petitioner has not shown that he was prejudiced or that the state

3  courts were objectively unreasonable in their application of the *Strickland* prejudice prong.

4      Petitioner has not satisfied either prong of *Strickland* and has not shown that the

5  state courts' rulings were objectively unreasonable or contrary to established federal law.

6  *See Richter*, 562 U.S. at 100. Thus, the claim in Ground Five has no merit.

7      **Ground Six**: Petitioner claims his trial counsel was ineffective because she failed

8  to call either an expert or a medical witness to testify that the victim could not have shot

9  him. (Doc. 6-1 at 123.) He asserts that the victim's testimony was inconsistent with his

10  wound in the following ways: he was not shot with a hollow-point round, the ammunition

11  the victim carried; and he was shot in the middle of the back, with an exit wound through

12  the collar bone, indicating the shooter was lower than him. *Id.*

13      The state post-conviction court rejected Petitioner's claim based on both *Strickland*

14  prongs. *Id.* at 69. The court determined that Petitioner's counsel did investigate the claim.

15  *Id.* at 68. It also mentioned that this information was presented to the jury in different ways,

16  such as through witnesses or closing arguments. *Id.* The court faulted Petitioner for not

17  providing an affidavit from an expert to explain what the testimony would have been. *Id.*

18  at 68-69. Finally, the court noted that the testimony did not indicate where the second

19  assailant was when the victim shot from the ground or how far apart the victim was the

20  men when they ran away. *Id.* at 69. Thus, the court concluded that Petitioner had "not stated

21  a colorable claim." *Id.* The appellate court adopted the post-conviction court's ruling.

22  *Cordova*, 2018 WL 4781486, at ¶ 4.

23      To be successful in the first instance, Petitioner needed to show that trial counsel's

24  performance was deficient and that there is a reasonable probability that the jury would

25  have returned a different verdict if the requested testimony had been admitted. *See*

26  *Knowles*, 556 U.S. at 122. To prevail here, Petitioner must show that the state courts were

27  unreasonable in their conclusion the trial counsel's performance was not deficient and he

28  was not prejudiced by the evidence's omission. *See Richter*, 562 U.S. at 100.

Here, during opening statements each attorney noted that Petitioner had been shot in the back. (Doc. 32-2 at 15, 24, 29.) Petitioner's counsel explained that the victim is going to say that he shot the robber in the chest. *Id.* at 29. Then the victim testified that he shot the robber "on top" of him, got into a standing position, and fired two more times toward the assailant running away. *Id.* at 45-46. The victim also testified that he only used "hollow-tip bullets" in his ".40 caliber Glock, mid-size" because "it would stick more in the person" and would not come out of its target. *Id.* at 75, 91. The jury was able to see Petitioner's shirts with the bullet hole and blood on it. *Id.* at 125-26. Petitioner's counsel confirmed with Detective Barber that Petitioner had been shot in the back. (Doc. 23-3 at 130-31.) She also asked him if "the bullet went through him and exited somewhere," which he confirmed. *Id.* at 131. During closing arguments, Codefendant's counsel pointed out that Petitioner's injury was not consistent with the information the victim had provided about hollow-point bullets. (Doc. 32-4 at 36.) Petitioner's counsel argued Petitioner was shot in the back and had two bullet holes with lots of blood because there was an exit wound. *Id.* at 62-63. She focused on how he had a partially punctured lung and would have been unable to run or make it to the hospital in the time allotted if he had been one of the robbers. *Id.* at 64. No party presented evidence as to the caliber of ammunition, large or otherwise, with which Petitioner had been shot. (*See* Docs. 32-2, 32-3, 32-4.)

First, Petitioner is not claiming that his counsel failed to investigate the medical evidence. (Doc. 6-1 at 123.) Nonetheless, it does appear that trial counsel talked with Petitioner's doctor and obtained his medical records. *Id.* Second, the jury heard most of the information Petitioner alleges should have been presented through other methods. (Doc. 23-2 at 15, 24, 29, 75, 125-26; Doc. 23-3 at 130-31; Doc. 32-4 at 36.) The decision to present this information through argument and witnesses was a strategic decision, which does not show deficient performance. *See Strickland*, 466 U.S. at 689. This is particularly true as the jury did not hear that Petitioner was shot with a "large caliber bullet, a .40 or .45" as admitted in the Amended Petition, when the victim shot large caliber bullets at the assailants. (Doc. 6-1 at 123; Doc. 23-2 at 91.)

1      Petitioner again cites to *Mann*, 774 F.3d 1203, to argue that the state court applied

2  a prejudice standard that is contrary to established federal law. (Doc. 24 at 40.) The Court

3  has explained *Mann* and its history above. The relevant information here is the Ninth

4  Circuit reheard *Mann* and affirmed the district court's denial of habeas relief as to Mann's

5  convictions and sentence. *Mann*, 828 F.3d at 1161. The en banc panel determined that

6  while the standard the state used was ambiguous, it was not clearly incorrect, and that

7  courts should examine the statements in context. *Id.* at 1147, 1157-58.

8      Here, the post-conviction court stated that Petitioner "had not shown the testimony

9  would have changed the outcome at trial" after it pointed out that Petitioner had "not

10  presented, through affidavits, the testimony of either expert." (Doc. 6-1 at 69.) The Court

11  considers this statement ambiguous as to the standard applied. First, the post-conviction

12  court did state the correct standard when explaining *Strickland*. *Id.* at 62. Second, the

13  post-conviction judge presided over the trial and saw the evidence actually admitted to the

14  jury. *Id.* at 60, 115. Third, Petitioner had not presented what the expert testimony would

15  have been. *Id.* at 69.

16      Even assuming this claim warrants a de novo review, Petitioner has still failed to

17  show prejudice under *Strickland*. Petitioner asserts that the testimony would have been

18  "presumably ex[]onerating." *Id.* at 123. Courts will presume prejudice in only narrow types

19  of cases, which are not applicable here. *See Garza v. Idaho*, 139 S. Ct. 738, 744 (2019);

20  *Bell v. Cone*, 535 U.S. 685, 695-96 (2002); *Roe v. Flores-Ortega*, 528 U.S. 470, 483

21  (2000). Petitioner has not shown what testimony would have been provided if an expert or

22  medical witness had been called. *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000)

23  (rejecting ineffective assistance of counsel claim where petitioner did not provide evidence

24  of testimony that would have been). Even Petitioner's argument that the trajectory of the

25  bullet proves that the person "who actually shot [him] was significantly lower" assumes

26  neither he nor the shooter could have been bending or leaning when the shots were fired.

27  (Doc. 6-1 at 123.) Further, the jury heard most of the information Petitioner argues should

28  have been admitted, without learning that Petitioner was shot with a large caliber bullet

when the victim carried large caliber ammunition. (Doc. 23-2 at 15, 24, 29, 75, 91, 125; Doc. 23-3 at 130; Doc. 32-4 at 36.) Accordingly, Petitioner has not shown "a reasonable probability that . . . the result of the proceeding would have been different" if the jury had heard from an expert or medical witness. *See Strickland*, 466 U.S. at 694.

Petitioner has not satisfied either prong of *Strickland* and has not shown that the state courts' rulings were objectively unreasonable or contrary to established federal law. *See Richter*, 562 U.S. at 100. Thus, the claims in Ground Six have no merit.

**Ground Seven**: Petitioner claims his trial counsel was ineffective because she did not object to the in-court identification of his codefendant or move for a mistrial after the identification. (Doc. 6-1 at 124.)

The post-conviction court rejected Petitioner's claim based on the first *Strickland* prong. *Id.* at 71. It reasoned that the defense counselors had thoroughly cross-examined the victim about his identification of Rodriguez and his failure to identify her prior to trial. *Id.* at 70. The trial court had also instructed the jury that it must determine whether the identification was reliable beyond a reasonable doubt. *Id.* Furthermore, the post-conviction court concluded that there was "[n]othing in Arias's identification of co-Defendant Rodriguez at trial was grounds for either Rodriguez or Cordova to move for a mistrial." *Id.* Petitioner's counsel had renewed her motion to sever and challenged the identification. *Id.* The appellate court adopted the post-conviction court's ruling. *Cordova*, 2018 WL 4781486, at ¶ 4.

To be successful in the first instance, Petitioner needed to show that trial counsel's performance was deficient and that there is a reasonable probability that the trial court would have granted the motion for mistrial or objection to the in-court identification. *See Knowles*, 556 U.S. at 122. To prevail here, Petitioner must show that the state courts were unreasonable in their conclusions. *See Richter*, 562 U.S. at 100.

Here, after the robbery, the victim was shown some six photographs, including Rodriguez. (Doc. 32-2 at 58.) He was unable to identify any of the photographs as the woman who had lured him into the alleyway. *Id.* During the investigation, the victim was

also shown a single picture of Rodriguez and still did not identify her as the woman that had tricked him into the alley. *Id.* at 71-72. At trial, however, the victim made an in-court identification of Rodriguez as the person who had led him into the alleyway. *Id.* at 57. Both defense counsel vigorously cross-examined him about this discrepancy, and Rodriguez's counsel pointed out that the victim had seen Rodriguez walk out of the courtroom with guards and that she was the only Hispanic woman at the defense table. *Id.* at 62, 64, 67-69, 71-72. Petitioner's counsel renewed her motion to sever based on the identification of Rodriguez; the trial court denied the motion. *Id.* at 89. The trial court instructed the jury that "[t]he State must prove beyond a reasonable doubt that [the victim's] in-court identification of the defendant . . . Rodriguez at this trial is reliable." (Doc. 32-4 at 13.) Finally, both defense counselors attacked the identification during their closing arguments. *Id.* at 32, 57.

Petitioner's counsel's performance was not deficient by failing to object to the in-court identification. First, counsel vigorously attacked the identification multiple times before the jury. (Doc. 32-2 at 67-69, 71-72; Doc. 32-4 at 57.) Second, counsel renewed her motion to sever. (Doc. 32-2 at 89.) Third, the decision to argue for severance instead of mistrial or object to the identification was a reasonable strategic decision. *See Strickland*, 466 U.S. at 689.

Petitioner did not satisfy the first prong of *Strickland* and has not shown that the state courts' rulings were objectively unreasonable or contrary to established federal law. *See Richter*, 562 U.S. at 100. Thus, the claims in Ground Seven have no merit.

**Ground Eight**: Petitioner claims his trial counsel was ineffective because she failed to inform him of his right to testify, which he would have exercised. (Doc. 6-1 at 126.) Petitioner asserts that he wanted to testify regarding his history with the officers to show that "these charges were not founded out of good, honest police work." *Id.* His attorney's investigator did "a few prep runs" with him, but his attorney decided she would not "put [him] on the stand because the state bears an extremely heavy burden." *Id.* During the trial, he again urged his attorney to let him testify that "this [case] was the product of vindication,

1    not justice." *Id.* at 127. She refused. *Id.*

2        The post-conviction court rejected Petitioner's claim as waived. *Id.* at 71-72. The

3    court focused on Petitioner's claim that his counsel refused to allow him to testify and

4    advised him to not testify. *Id.* But it indicated that "If Cordova had testified at trial, he

5    would have been subject to cross-examination regarding a previous felony conviction." *Id.*

6    at 72. The court also noted that Cordova had been convicted of "aggravated assault with a

7    deadly weapon." *Id.* at 72 n.8. The appellate court adopted the post-conviction court's

8    ruling and noted that Petitioner failed to cite anything "suggesting he was unaware of his

9    right to testify." *Cordova*, 2018 WL 4781486, at ¶ 4. Indeed, as described below Petitioner

10   was aware of his right to testify and that the decision rested with him because the trial court

11   instructed the jury accordingly.

12       To be successful in the first instance, Petitioner needed to show that trial counsel's

13   performance was deficient and that there is a reasonable probability that the outcome would

14   have been different had he been informed of his right to testify. *See Knowles*, 556 U.S. at

15   122. To prevail here, Petitioner must show that the state courts were unreasonable in their

16   conclusions. *See Richter*, 562 U.S. at 100.

17       Here, Petitioner neither testified nor told the trial court that he wished to testify.

18   (Docs. 32-2, 32-3, 32-4.) Before closing arguments, the trial court provided several

19   instructions to the jury, including: "A defendant is not required to testify. The decision on

20   whether or not to testify is left to a defendant acting with the advice of an attorney." (Doc.

21   32-4 at 10.)

22       First, Petitioner was aware of his right to testify and that the decision rested with

23   him because the trial court instructed the jury as such. *Id.* After hearing that the decision

24   was left to him, he did not object or notify the trial court that he had wanted to testify. (Doc.

25   32-4 at 10-100.) "A defendant is 'presumed to assent to his attorney's tactical decision not

26   to have him testify.'" *United States v. Pino-Noriega*, 189 F.3d 1089, 1094 (9th Cir. 1999)

27   (quoting *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)). "[W]aiver of the right

28   to testify may be inferred from the defendant's conduct and is presumed from the

1    defendant's failure to testify or notify the court of his desire to do so." *Id.* at 195 (alteration

2    in *Pino-Noriega*) (quoting *Joelson*, 7 F.3d at 177). Thus, the state courts were not

3    unreasonable in its ruling that Petitioner implicitly waived his right to testify and cannot

4    now argue that he had wanted to testify. *See id.* Further, Petitioner has not shown that there

5    was a reasonable probability that the outcome would have been different had he been

6    informed of his right to testify, or had he testified.

7         Hence, Petitioner has not established that he received ineffective assistance of

8    counsel or that the state courts' rulings were unreasonable or contrary to established federal

9    law. *See Richter*, 562 U.S. at 100. Thus, the claim in Ground Eight lacks merit.

10   **RECOMMENDATION**

11        Petitioner's claims in grounds Two, and Four and parts of grounds Three and Eight

12   were barred from review because they are procedurally defaulted without excuse or not

13   cognizable in this proceeding. His remaining claims lack merit. Accordingly, it is

14   recommended that the district court, after its independent review, deny and dismiss the

15   Amended Petition.

16        Pursuant to 28 U.S.C. § 636(b)(1) and 72(b)(2), Fed. R. Civ. P., any party may serve

17   and file written objections within fourteen days of being served with a copy of the Report

18   and Recommendation. A party may respond to the other party's objections within fourteen

19   days. No reply brief shall be filed on objections unless leave is granted by the district court.

20   If objections are not timely filed, they may be deemed waived. The Clerk of Court is

21   directed to terminate the referral of this matter. Filed objections should bear the following

22   case number: **4:20-cv-00163-TUC-SHR**.

23        Dated this 16th day of June, 2021.

24

25

26

27

28

Honorable D. Thomas Ferraro
United States Magistrate Judge